UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY HARVEY,

                        Plaintiff,

                                                    9:09-cv-00152
                    v.                              (MAD/GHL)


CHRISTOPHER FARBER, C.O. DRAKE, C.O. JEWEL,
C.O. REESE, C.O. FAHEY, C.O.  NEWTOWN, C.O.
PARISI, CHARLENE MACRI,

                        Defendants.

_____


APPEARANCES:                              OF COUNSEL:

Gregory Harvey
Plaintiff *Pro Se*
07-A-3479
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

MURPHY BURNS BARBER & MURPHY, LLP         THOMAS K. MURPHY, ESQ.
   Counsel for Defendants Farber, Drake, Jewel,
   Reese, Fahey, Newton, and Parisi
226 Great Oaks Boulevard
Albany, NY 12203

WILSON ELSER MOSKOWITZ                     JOSEPH T. PERKINS, ESQ.
EDELMAN & DICKER LLP                       ELIZABETH J. GROGAN, ESQ.
   Counsel for Defendant Macri
677 Broadway - 9th Floor
Albany, NY 12207-2996


GEORGE H. LOWE, United States Magistrate Judge

1

## REPORT-RECOMMENDATION and ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Gregory Harvey alleges that his rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated by Defendants Christopher Farber, Reese, Jewell, Fahey, Newtown, Parisi, Francis Drake, and Charlene Macri.  (Dkt. No. 33.)  Currently pending before the Court are summary judgment motions, pursuant to Federal Rule of Civil Procedure 56(b), by County Defendants[1] (Dkt. No. 57) and Defendant Macri (Dkt. No. 58).  Plaintiff has responded to both motions.  (Dkt. Nos. 69, 70.)  For the reasons that follow, I recommend that County Defendants' motion be denied in part and granted in part, and I further recommend that Defendant Macri's motion be granted in its entirety.

I.      **BACKGROUND**

A.      **Summary of the Amended Complaint**

Plaintiff is currently confined at Sing Sing Correctional Facility ("Sing Sing").  (Dkt. No. 33 at 1.)[2]  The events giving rise to this action occurred during his confinement at the Herkimer County Jail ("HCJ").  *See generally id.*

1.      Defendants Farber and Herkimer County

_____

[1]  Sheriff Farber, Herkimer County, and Corrections Officer Drake will be collectively referred to as "County Defendants."  Defendants Jewel, Reese, Fahey, Newton, and Parisi have not joined in the pending motions, and the allegations against them will not be discussed.

[2]  Unless otherwise noted, all references to page numbers will be to the page numbers assigned by the Court's electronic docketing system.

2

Defendant Farber is the Sheriff of Herkimer County.  (Dkt. No. 33 at 1.)  On March 16, 2006, Defendant Farber allegedly ordered his employees to discriminate against Plaintiff by not transferring Plaintiff to another county jail that employed a medical doctor and psychiatric staff. *Id.* at 5.  HCJ's medical staff—comprised only of a consulting nurse practitioner and a part-time nurse—could not meet Plaintiff's serious medical and psychiatric needs.  *Id.*  Defendant Farber's decision to keep Plaintiff at HCJ demonstrated deliberate indifference to Plaintiff's serious medical and psychiatric needs in violation of the Eighth Amendment.  *Id.* at 6.  It also violated the Fourth Amendment's Equal Protection Clause as other inmates "could volunteer" to be transferred to another county jail.  *Id.*

County Defendants have characterized the naming of Defendant Farber in the Amended Complaint as "an apparent attempt to state a claim against [Herkimer] County for municipal liability . . . ."  (Dkt. No. 57-8 at 12.)  A claim brought against Defendant Farber in his official capacity as Herkimer County Sheriff would be a claim of municipal liability against Herkimer County.  *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007); *Zuk v. Onondaga County*, No. 5:07-CV-732 (GTS/GJD), 2010 WL 3909524, at *20 (N.D.N.Y. Sept. 30, 2010) (Suddaby, J.).  The Amended Complaint does not state whether Defendant Farber is being sued in his official or individual capacity.  The Second Circuit has directed District Courts to construe *pro se* pleadings "liberally" and "to raise the strongest arguments that they 'suggest.'"  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citations omitted).  As such, the Court will construe the Amended Complaint as alleging a claim against Defendant Farber officially and individually.  Defendants have also responded to the Amended Complaint as stating a claim

against Herkimer County.  (*See* Dkt. No. 57-8 at 13.)  Accordingly, the Court also construes the Amended Complaint as stating a claim against Herkimer County.

### 2.    Defendant Drake

Plaintiff accuses Defendant Drake of medical indifference in failing to provide medical assistance.  (Dkt. No. 33 at 7.)  Plaintiff suffered high blood pressure on April 11, 2007.  *Id.* Defendant Drake stood by and "watched Plaintiff lie on the floor in serious pain" for forty five minutes as other corrections officers yelled "Stroke!  Stroke!"  *Id.*  Corrections Officer White later called an off duty sergeant who took Plaintiff to Little Falls Hospital for treatment.  *Id.*

### 3.    Defendant Macri

Plaintiff accuses Defendant Macri of exhibiting deliberate indifference to Plaintiff's serious medical needs on a number of occasions.  (Dkt. No. 33 at 7.)  Defendant Macri knew that Plaintiff, prior to his incarceration, was receiving physical therapy three days a week for neck, back, and shoulder injuries, but Defendant Macri failed to treat any of these injuries.  *Id.*  She also failed to treat Plaintiff's high blood pressure, tendinitis of the right ankle, anemia, and hemorrhoids.  *Id.*  Defendant Macri also failed to provide psychiatric treatment for Plaintiff's bipolar disorder.  *Id.*

### 4.    Failure to Protect

On August 24, 2006, Plaintiff and Inmate Osuchiusky fought over an item that Inmate Osuchiusky had borrowed from Plaintiff.  (Dkt. No. 33 at 8.)  HCJ officials had been informed by mental health officials from Rochester Psychiatric Center and Herkimer County Mental Health that Plaintiff should not be housed in general population.  (Dkt. No. 33 at 8.)  Plaintiff

argues that this fight occurred because he was not transferred to a county jail that had psychiatric staff and housing.  (Dkt. No. 33 at 8.)

### B.     Summary of Grounds in Support of Defendants' Motions

County Defendants argue that (1) Plaintiff cannot show that he suffered from a serious medical condition or that Defendant Drake was deliberately indifferent to Plaintiff's serious medical needs; (2) Plaintiff cannot prove the requisite elements of his allegation that he was assaulted by another inmate in violation of his constitutional rights; and (3) Plaintiff has failed to state a claim against Defendant Farber.  (Dkt. No. 57-8.).

Defendant Macri argues that (1) she is not a state actor acting under color of state law; (2) she did not act with deliberate indifference toward Plaintiff; (3) she did not violate the standard of care; (4) her conduct was neither extreme nor outrageous; (5) Plaintiff is not entitled to punitive damages; (6) the Court lacks jurisdiction over Plaintiff's supplemental state law claims, if any; and (7) Plaintiff's claims are barred by the statute of limitations.  (Dkt. No. 58.)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Legal Standards Governing Motions to Dismiss

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based on the allegations of the plaintiff's complaint,[3] such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnie Gen.*

---

[3]  County Defendants argue that Plaintiff "has failed to plead" Defendant Farber's personal involvement in the constitutional violations.  (Dkt. No. 57-8 at 14.)  They also argue that Plaintiff "has failed to set forth any allegations" to support his claim against Herkimer County.  *Id.* at 13.

*Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968) (citations omitted); *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. C. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949.

> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 1950 (internal citations and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72

(2d Cir. 2009).  However, "the tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct.

at 1949.

### B.    Legal Standards Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c)(2).  The party moving for summary judgment bears the initial burden

of showing, through the production of admissible evidence, that no genuine issue of material fact

exists.  Only after the moving party has met this burden is the non-moving party required to

produce evidence demonstrating that genuine issues of material fact exist.  *Salahuddin v. Goord*,

467 F.3d 263, 272-73 (2d Cir. 2006).

The non-moving party must do more than "rest upon the mere allegations . . . of his

pleading" or "simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  Rather, a

dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  In determining whether a genuine issue of material fact[4] exists, the Court must resolve

---

[4] A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson*,
477 U.S. at 248.

7

all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

In this case, Plaintiff has opposed Defendants' motions for summary judgment.  (*See* Dkt. Nos. 69, 70.)  However, Plaintiff's responses in opposition do not fully comply with the Court's Local Rules.  For example, Plaintiff does not provide separate memoranda of law.  Rather, his legal arguments are included as a part of his affidavits.  Also, while Plaintiff has not provided responses to Defendants' Statements of Material Facts ("Rule 7.1 Statements"), he has included exhibits in opposition to the motions.

Here, I recommend that the Court exercise its discretion and overlook Plaintiff's failure to fully comply with the local rules.[5]  In addition, out of an abundance of caution, I have independently reviewed the entire record.  Where the Court chooses to conduct such an independent review of the record, any verified complaint filed by plaintiff should be treated as an affidavit.  *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") (citations omitted).  To be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified

---

[5]  In this Circuit, a district court has broad discretion in determining whether to overlook a party's failure to comply with local court rules.  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citing *Wright v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000)).  Thus, a district court, in its discretion, may "conduct an assiduous review of the record" even where one of the parties has failed to file a Statement of Material Facts.  *Id.* (quoting *Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000)).  Moreover, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

8

complaint) must, among other things, be based on "personal knowledge."  Fed. R. Civ. P.

56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on

personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

or declarant is competent to testify on the matters stated.").  An affidavit (or verified complaint)

is not based on personal knowledge if, for example, it is based on mere "information and belief"

or hearsay.  *Patterson*, 375 F.3d at 219; *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643

(2d Cir. 1988); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970).

In this case, Plaintiff's opposition papers include a declaration that their contents are "true

and correct."  (Dkt. No. 69 at 10; Dkt. No. 70 at 11.)  They also include a statement that Plaintiff

has been "duly sworn according to the law."  (Dkt. No. 69 at 1; Dkt. No. 70 at 1.)  Plaintiff's

Amended Complaint also includes a "declar[ation] under penalty of perjury that the [facts alleged

in the Amended Complaint are] true and correct."  (Dkt. No. 33 at 9.)  Finally, the Amended

Complaint does not allege any matters "upon information and belief."  Thus, Plaintiff's

declaration "was the equivalent of the oath that would be given with respect to an affidavit."

*Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001).  As such, the Amended Complaint is

a verified complaint and should be treated as an affidavit.  *Colon*, 58 F.3d at 872.

In overlooking Plaintiff's failure to fully comply with the local rules, however, his

affidavits (or verified complaint) must still comply with Rule 56.  For example, such an affidavit

(or verified complaint) must not be conclusory.  *See Patterson*, 375 F.3d at 219; *Applegate*, 425

F.2d at 97.  An affidavit is conclusory if, for example, its assertions lack any supporting evidence

or are too general.  *See Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements,

[like those made in affidavits, deposition testimony, or trial testimony] that are devoid of any

specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") (citations omitted).  However, even where an affidavit (or verified complaint) is non-conclusory, it may be insufficient to create a factual issue where it possesses the following two characteristics: (1) it constitutes almost the sole or exclusive basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility that, even after drawing all inferences in the light most favorable to the nomovant, no reasonable jury could find for the nomovant because the testimony is complete and/or replete with inconsistencies and improbabilities.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005); *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986); *Olle v. Columbia Univ.*, 332 F. Supp. 2d 599, 612-15 (S.D.N.Y. 2004) (Sweet, J.).

## III.    ANALYSIS

### A.    Defendants Farber and Herkimer County

#### 1.    Defendant Farber

County Defendants argue that Plaintiff "has failed to plead and cannot come forward with admissible evidence showing" Defendant Farber's personal involvement in the constitutional violations.  (Dkt. No. 57-8 at 14.)  Although contained in a summary judgment motion, an argument that a plaintiff "has failed to plead" sufficient allegations is, in effect, a Rule 12(b)(6) motion to dismiss.  *See* Point II(A) *supra*.  Accordingly, the Court will analyze Defendant Farber's arguments under the standards governing motions to dismiss under Rule 12(b)(6) and motions for summary judgment under Rule 56.

A defendant's personal involvement "in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). To prevail, the plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Where a defendant is a supervisory official a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior*) is insufficient to show his personal involvement in that unlawful conduct. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

Supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon*, 58 F.3d at 873 (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[6]

---

[6] The Supreme Court's decision in *Iqbal*, 129 S. Ct. 1937, arguably casts in doubt the continued viability of some of the categories set forth in *Colon*. *See Sash v. United States*, 674 F. Supp. 2d 531 (S.D.N.Y. 2009) (Peck, Mag. J.). Here, the Court will assume *arguendo* that all of the *Colon* categories apply.

11

It appears that County Defendants interpret the claims against Defendant Farber as arising from the alleged uses of excessive force on March 29, 2006, and October 13, 2006; deprivation of medical care on April 11, 2007; and failure to protect on August 24, 2006. Plaintiff has not alleged Defendant Farber's personal involvement in those incidents. But in reading the Amended Complaint liberally, as the Court must do given Plaintiff's *pro se* status, the Court construes the claims against Defendant Farber as arising from Defendant Farber's March 16, 2006, order. (*See* Dkt. No. 33 at 5-6.)

Plaintiff claims that "[o]n March 16th[,] 2006[, Defendant] Farber ordered his administration to discriminate against Plaintiff and not board Plaintiff out to a nearby county jail that had a medical doctor and a psychiatric staff." (Dkt. No. 33 at 5.). Plaintiff argues that Defendant Farber's order violated the Eighth Amendment because HCJ had "only a consulting nurse practitioner and a part-time nurse," which could not meet Plaintiffs' serious psychiatric needs.[7] *Id.* at 5-6. Plaintiff also accuses Defendant Farber of discrimination in violation of the

---

[7] The Eighth Amendment's prohibition on cruel and unusual punishment applies to those who have been convicted of a crime and sentenced, and who thus suffer the "punishment" contemplated by the Cruel and Unusual Punishment Clause. *Benjamin v. Fraser*, 343 F.3d 35, 49-50 (2d Cir. 2003) (citing cases). Claims concerning the conditions of confinement brought by a pretrial detainee, however, are analyzed under the Fourteenth Amendment's Due Process Clause. *Id.* Defendant Drake states that Plaintiff was incarcerated at HCJ as a pretrial detainee during the time of the events giving rise to the present action. (Dkt. No. 57-8 at 6.) Plaintiff, however, states that he was committed to HCJ following his conviction for rape. (Dkt. No. 59-1 at 8, 14.) Regardless of Plaintiff's status during his incarceration at HCJ, the standards when evaluating deliberate indifference to a person in custody are identical whether under the Eighth Amendment or Fourteenth Amendment. *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("[D]eliberate indifference claims brought by pretrial detainees in state facilities under the Due Process Clause of the Fourteenth Amendment [are] to be analyzed under the same test as Eighth Amendment claims by inmates who stood convicted."); *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment."); *see also DeShaney v. Winnebego County Dep't of Soc. Servs.*, 489 U.S. 189,

12

Fourteenth Amendment's Equal Protection Clause by issuing this order "as all other inmates could volunteer to be boarded out to a nearby county jail" upon request.[8]  *Id.* at 6.  If true, the accusations against Defendant Farber contained in the Amended Complaint show his direct participation in the constitutional violations as he "ordered" his staff to deny Plaintiff's transfer request on October 16, 2006.

Accordingly, Defendant Farber's motion to dismiss under Rule 12(b)(6) should be denied.

County Defendants also argue that Plaintiff "cannot come forward with admissible evidence showing that [Defendant] Farber had any involvement in the incidents of which he complains—either personally or from a policy standpoint—that would demonstrate a violation of [Plaintiff's] Constitutional rights."  (Dkt. No. 57-8 at 14.)  On summary judgment, the movant bears the initial burden of showing, through the production of admissible evidence, that no genuine issues of material fact exist.  *Salahuddin*, 467 F.3d at 272.  The movant may meet its initial burden by "citing to particular materials in the record; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  To show that the nonmovant cannot produce admissible evidence to support its claims, the movant must

---

199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being . . . [including] food, clothing, shelter, medical care, and reasonable safety . . . .").

[8]  An equal protection claim "may be brought by a 'class of one' 'where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  *Tatta v. Wright*, 616 F. Supp. 2d 308, 319 (N.D.N.Y. 2007) (Sharpe, J.) (citing *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

"identify[] evidentiary insufficiency" and may "not simply deny[] the opponent's pleadings." *Salahuddin*, 467 F.3d at 273 (citations omitted); *see also* 11 JAMES WM. ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.40[1][b][iv] (rev. 3d ed. Supp. 2011) ("[W]hen a movant contends a nonmovant lacks crucial evidence, this factual contention must be supported in the same manner as any other factual contention made in a summary judgment motion, *by reference to disclosure and discovery materials, admissions, affidavits or declarations, and the like*." (footnotes omitted; emphasis added)).  If the movant meets its initial burden, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact."  *Salahuddin*, 467 F.3d at 273.

Here, Defendant Farber has failed to produce any evidence (e.g., a sworn affidavit) to show that he was not personally involved in the alleged unconstitutional conduct.[9]  Moreover, County Defendants have not referenced any material in the record to support their contention that Plaintiff cannot produce any admissible evidence to show Defendant Farber's personal involvement.  Because County Defendants did not meet their initial burden, the burden has not shifted to Plaintiff to raise an issue of material fact.  In the absence of any argument on the merits of Plaintiffs' deliberate indifference or equal protection claims against Defendant Farber, summary judgment is not appropriate.

---

[9]  County Defendants assert in their 7.1 Statement that the Amended Complaint "fails to allege the personal involvement of [Defendant Farber] in any of the incidents described in the" Amended Complaint.  (Dkt. No. 57-3 ¶ 39.)  This assertion, however, does not satisfy County Defendants' initial burden.  Each factual assertion contained in a 7.1 Statement must be accompanied by "a specific citation to the record where the fact is established."  N.D.N.Y. L.R. 7.1(a)(3).  Although County Defendants cite to the Amended Complaint, they may "not simply deny[] the opponents' pleadings" to meet their initial burden.  *See Salahuddin*, 467 F.3d at 273. Finally, as discussed above, the Court has concluded that the Amended Complaint sufficiently states a claim against Defendant Farber based on his March 16, 2006, order denying Plaintiff's transfer request.

Accordingly, I recommend denying Defendant Farber's motion for summary judgment.

2.      The *Monell* Claim

County Defendants argue that Plaintiff "has failed to set forth any allegations that would support the existence of an unconstitutional policy, custom or practice on the part of Herkimer County that would have caused any of the alleged [constitutional] violations."  (Dkt. No. 57-8 at 13.)  This argument is, in effect, a Rule 12(b)(6) motion to dismiss for failure to state a claim, and should be analyzed under Rule 12(b)(6) standards.  *See* Part II(A) *supra*.

A municipality may not be held liable on the basis of respondeat superior alone.  *Powell v. Bucci*, No. 04-CV-1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov. 30, 2005) (McAvoy, J.); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").  "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy."  *Powell*, 2005 WL 3244193 at *5.  The "custom," however, need not "receive[] formal approval through the body's decision-making channels."  *Monell*, 436 U.S. at 690-91.  "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to . . . prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."  *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983).

With regard to the first element (the existence of a policy or custom), a plaintiff may establish the "policy, custom, or practice" requirement by demonstrating:

> (1) a formal policy officially endorsed by the municipality . . . ; (2) actions taken by government officials responsible for establishing

> municipal policies related to the particular deprivation in question .
> . . ; (3) a practice so consistent and widespread that it constitutes a
> "custom or usage" sufficient to impute constructive knowledge of the
> practice to policymaking officials . . . ; or (4) a failure by
> policymakers to train or supervise subordinates to such an extent that
> it amounts to "deliberate indifference" to the rights of those who
> come in contact with the municipal employees[.]

*Dorsett-Felicelli, Inc. v. County of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (Kahn, J.)

(citing three Supreme cases for these four ways), *accord, Dunbar v. County of Saratoga*, 358 F.

Supp. 2d 115, 133-34 (N.D.N.Y. 2005) (Munson, J.); *see also Clayton v. City of Kingston*, 44 F.

Supp. 2d 177, 183 (N.D.N.Y. 1999) (McAvoy, J.) (transposing order of second and third ways,

and citing five more Supreme Court cases).

    To establish the second element (causation), a plaintiff must show "a direct causal link"

or "an affirmative link" between the municipal policy or custom and the alleged constitutional

deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation).  *See*

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989).[10]

---

[10]  *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823, n.8 (1985) ("The fact that
municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s
requirement that the particular policy be the 'moving force' behind a constitutional violation.
There must at least be an affirmative link between [for example] the training inadequacies
alleged, and the particular constitutional violation at issue."); *Monell*, 436 U.S. at 694 ("It is
when execution of a government's policy or custom . . . inflicts the injury that the government as
an entity is responsible under § 1983.  Since this case unquestionably involves official policy as
the moving force of the constitutional violation [at issue] . . . we must reverse the judgment
below."); *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("A plaintiff who seeks
to hold a municipality liable in damages under section 1983 must prove that . . . an official policy
or custom [was] the cause of the deprivation of constitutional rights. . . .  The plaintiff must
establish a causal connection—an affirmative link—between the policy and the deprivation of his
constitutional rights.") (internal quotation marks and citation omitted); *Batista*, 702 F.2d at 397
("Absent a showing of a causal link between an official policy or custom and the plaintiff's
injury, *Monell* prohibits a finding of liability against the City.").

"Where the plaintiff seeks to hold a municipality liable for a single decision by a municipal policy maker, the plaintiff must show that the official had final policymaking power." *Szymaszek v. Mahar*, No. 9:06-CV-719 (TJM/GJD), 2008 WL 4518613, at *6 (N.D.N.Y. 2008) (McAvoy, J.) (citations omitted). "The challenged action must be also within that official's area of policymaking authority." *Id.* The official must also have final policymaking authority in that area. *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). "Whether the official has final policymaking authority is a legal question that is determined based upon state law." *Id.* New York State "law places the sheriff in charge of the [County] Jail; and the County's chief executive officer . . . treats the sheriff, insofar as Jail operations are concerned, as 'autonomous.'" *Id.*; *see also Sheriff's Silver Star Ass'n v. County of Oswego*, 56 F. Supp. 2d 263, 267 n.6 (N.D.N.Y. 1999) (McCurn, J.) ("[C]ourts in this Circuit have found that New York counties can be liable for the decisions of the sheriff as final policymaker over issues related to jail operations."); N.Y. Corr. Law § 500-b(1) (providing that the county sheriff shall be "the person responsible . . . for . . . safely keeping persons committed to a county jail"); N.Y. Corr. Law § 500-c(1) ("Except [for the counties within the City of New York], the sheriff of each county shall have custody of the county jail of such county."); *Id.* § 500-c(4) ("The [sheriff] shall receive and safely keep in the county jail of his county each person lawfully committed to his custody . . . .").

As discussed above, Plaintiff's Amended Complaint sufficiently sets forth claims that Defendant Farber—as the Herkimer County Sheriff—gave an order that violated Plaintiff's right to adequate medical care and equal protection. The Amended Complaint also asserts that it was Defendant Farber who "ordered his administration" to violate Plaintiff's constitutional rights. (Dkt. No. 33 at 5.) Thus, Plaintiff has sufficiently alleged that Defendant Farber is a policymaker

17

for Herkimer County on issues of inmate security and custody, and that Herkimer County should be held liable for Defendant Farber's unconstitutional actions.

Accordingly, County Defendants' motion to dismiss Plaintiff's municipal liability claim should be denied.

### B.     Defendant Drake

Plaintiff accuses Defendant Drake of acting with deliberate indifference in violation of his Eighth Amendment rights by depriving him of medical care on April 11, 2007.[11]  (Dkt. No. 69 at1; Dkt. No. 70 at 1.)  The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishment  The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976).  Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id.* at 102.  Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

There are two elements to a prisoner's claim that prison officials violated his constitutional right to receive medical care: "the plaintiff must show that she or he had a serious

---

[11]  If Plaintiff were a pretrial detainee, then this claim must be analyzed under the Fourteenth Amendment Due Process Clause rather than under the Eighth Amendment. *Benjamin*, 343 F.3d at 51.  Regardless of Plaintiff's status, "[c]laims for deliberate indifference to a serious medical need should be analyzed under the same standard whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo*, 581 F.3d at 72.

medical condition and that it was met with deliberate indifference." *Caiozzo*, 581 F.3d at 72 (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (citations omitted), *accord*, *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  *Chance*, 143 F.3d at 702-03.  This "inquiry must be tailored to the specific circumstances of each case." *Smith*, 316 F.3d at 185.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). To establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-03.  The inmate must then establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511

19

U.S. at 835; *Chance*, 143 F.3d at 703.  An "inadvertent failure to provide adequate medical care"

does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.  Moreover, "a

complaint that a physician has been negligent in diagnosing or treating a medical condition does

not state a valid claim . . . ." *Id.*

Stated another way, "medical malpractice does not become a constitutional violation

merely because the victim is a prisoner." *Id.*; *Smith*, 316 F.3d at 184 ("Because the Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state

tort law, not every lapse in prison medical care will rise to the level of a constitutional

violation.").  However, malpractice that amounts to culpable recklessness constitutes deliberate

indifference.  *Chance*, 143 F.3d at 703.  Accordingly, "a physician may be deliberately

indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Id.*  In

a summary judgment motion, the critical question is whether a reasonable jury could conclude

that the defendants "knew of and disregarded an excessive risk to [plaintiff's] health and safety

and that [the defendants were] both aware of facts from which the inference could be drawn that

a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72

(internal quotation marks and alterations omitted).

Moreover, "[n]on-medical prison personnel engage in deliberate indifference where they

'intentionally delayed access to medical care when the inmate was in extreme pain and has made

his medical problem known to the attendant prison personnel.'" *Baumann v. Walsh*, 36 F. Supp.

2d 508, 512 (N.D.N.Y. 1999) (Scullin, J.) (quoting *Hodge v. Coughlin*, No. 92 Civ. 0622, 1994

WL 519902, at *11 (S.D.N.Y. Sept. 22, 1994) (Preska, J.)); *see also Estelle*, 429 U.S. at 104-05

20

(noting that deliberate indifference can be manifested "by prison guards in intentionally denying or delaying access to medical care").

Defendant Drake is accused of ignoring Plaintiff's cries for help on April 11, 2007.  (Dkt. No. 1 at 7; Dkt. No. 69 at 3.)  Plaintiff states that he "was on the floor screaming in pain" while other officers repeatedly shouted "stroke."  (Dkt. No. 69 at 3.)  Defendant Drake admits that Plaintiff complained that he was going to have a stroke.  (Dkt. No. 57-6 ¶ 3.)  Even though Plaintiff did not suffer a stroke (Dkt. No. 57-4 ¶ 12; Dkt. No. 59-1 at 43-44), a reasonable jury could conclude that Plaintiff was suffering, or potentially suffering, from a serious medical condition.  *See Rodriguez v. Savickas*, No. 92 Civ. 4032 (MBM), 1996 WL 671100, at *3 (S.D.N.Y. Nov. 19, 1996) (Mukasey, J.) ("A stroke or potential stroke is a medical condition of urgency that could produce death, degeneration, and extreme pain.").

Plaintiff accuses Defendant Drake of ignoring pleas for medical assistance for forty-five minutes.  *Id.*  (Dkt. No. 33 at 7; Dkt. No. 69 at 3.)  Defendant Drake denies this accusation.  (Dkt. No. 57-6 ¶ 6.)  Thus, there is an issue of fact on whether Defendant Drake was deliberately indifferent to Plaintiff's serious medical needs.

Although Plaintiff eventually received medical assistance, delaying treatment amounts to deliberate indifference when "officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years."  *Morrison v. Mamis*, No. 08 Civ. 4302(PAC) (AJP), 2008 WL 5451639, at *7 n. 19 (S.D.N.Y. Dec. 18, 2008) (Peck, Mag. J.) (citing *Demata v. New York State Corr. Dep't of Health Servs.*, No. 99-0066, 198 F.3d 233 (table), 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)).  Plaintiff claims that Defendant Drake and other staff "hated the Plaintiff

21

because he daily kicked [*sic*] the doors of cell creating loud noise that disturbed other inmates and day room activities." (Dkt. No. 69 at 3.) As I have already found that an issue of fact exists as to whether Defendant Drake ignored Plaintiff's cries for help, I also find that a reasonable jury could conclude that any delay in providing medical assistance was a form of punishment in deliberate indifference to Plaintiff's serious medical needs.

Accordingly, I recommend denying Defendant Drake's motion for summary judgment.

### C.     Defendant Macri[12]

1.     State Actor

Plaintiff brings this action under 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution" of the United States by a person acting under color of state law. *Wilder v. Va. Hosp. Ass'n.*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Thus, Plaintiff must show "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citations omitted). Defendant Macri argues, *inter alia*, that she should be granted summary judgment because she is not a state actor and did not act under color of state law. (Dkt. No. 58-2 at 4.) Defendant Macri is an employee of Little Falls Hospital ("Hospital") which performs certain

---

[12]  Plaintiff states that he was never treated by Defendant Macri but that he is suing her because he believes "all of the issues that [he] had . . . rest solely only on . . . her decision[s]," and "all [of his] medical situations, the reason[s] why they weren't being answered was due" to Defendant Macri. (Dkt. No. 78 at 45.) Defendant Macri is unable to recall any direct interaction she had with Plaintiff. (Dkt. No. 58-3 ¶ 14.) However, Defendant Macri's signature appears throughout Plaintiff's medical records to approve orders or prescriptions. (*See generally* Dkt. Nos. 61-67.) Thus, there is sufficient evidence in the record for a reasonable jury to conclude that Defendant Macri was involved in Plaintiff's medical care.

duties at HCJ pursuant to a contract between the Hospital and HCJ.  (Dkt. No. 58-3 ¶ 6; Dkt. No. 75 ¶ 3.)  As such, in order to prevail on any claim against Defendant Macri under Section 1983, Plaintiff must first show that Defendant Macri, a private party, was "acting under color of state law" at the time she allegedly violated Plaintiff's constitutional rights.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996).  A private individual can be held liable under Section 1983 "only as a 'willful participant in joint activity with the State or its agents.'"  *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  "Actions by a private party are deemed state action if 'there is a sufficiently close nexus between the State and the challenged action' that the actions by the private parties 'may be fairly treated as that of the State itself.'" *Chan v. City of New York*, 1 F.3d 96, 106 (2d Cir. 1993) (citation omitted).  "The purpose of [the close-nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (emphasis in original; citations omitted).

The crucial inquiry in determining whether a nurse who provides medical services to inmates is a state actor for purposes of Section 1983 is the relationship among the State, the nurse, and the plaintiff.  *See West*, 487 U.S. at 56.[13]  Defendant Macri relies on *Nunez v. Horn*, 72 F. Supp. 2d 24 (N.D.N.Y. 1999) (Hurd, J.), to support the proposition that she was not a state actor.  In *Nunez*, a private physician who performed surgery on the plaintiff in a private hospital

---

[13]  Although *West* dealt with a private doctor who was under contract with the state to provide medical care to inmates at a state prison hospital, "nothing in *West* or its progeny suggests that a distinction should be made between doctors and nurses in that setting."  *See Burgess v. County of Rensselaer*, No. 1:03-CV-00652 (NPM-RFT), 2006 WL 3729750, at *4 (N.D.N.Y. Dec. 18, 2006) (McCurn, J.).

was found not have been a state actor for Section 1983 purposes. *Id.* at 26-27. There, the private physician "freely performed his medical duties in a much more physician-controlled environment" (i.e., the private hospital) as opposed to a "prison hospital," which is "subject to all of the pressures and constraints resulting from security concerns[.]" *Id.* at 27. Here, unlike the situs of the medical care in *Nunez*, Defendant Macri performed her work inside the jail. (Dkt. No. 58-3 ¶ 6; Dkt. No. 75 ¶ 4.)

Defendant Macri also argues that "no contract exists between her and [HCJ] or any other entity, specifically describing her work function as for services within a correctional facility, nor to provide services to inmates." (Dkt. No. 58-2 at 5-6.) Defendant Macri, an employee of the Hospital, was assigned to work at HCJ by the Hospital. *Id.* She adds that there was neither an assumption of duty nor a special relationship between her and HCJ. *Id.* The contractual relationship between the Hospital and HCJ to provide medical services at HCJ is sufficient to subject the Hospital to Section 1983 liability. *See Sherlock*, 84 F.3d at 527 ("The fact that a municipality is responsible for providing medical attention to persons held in its custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided[.]"). By extension, Defendant Macri, as an employee of the Hospital, is also subject to Section 1983 liability. *Burgess*, 2006 WL 3729750, at *4 (citing *Riester v. Riverside Cmty. Sch.*, 257 F. Supp. 2d 968, 972 (S.D. Ohio 2002) (where community school was found to be a state actor, so were its employees and management companies)).

Accordingly, I find that a reasonable juror could conclude that Defendant Macri was a state actor.

24

2.    Timeliness of Claims

Defendant Macri argues that the deliberate indifference claims against her are barred by

the statute of limitations.  (Dkt. No. 58-2 at 13.)  Claims arising under 42 U.S.C. § 1983 are

governed by state statutes of limitations.  *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).  The

"applicable statute of limitations for [Section] 1983 actions arising in New York requires claims

to be brought within three years."  *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir.

1995).  Under federal law, generally, a claim arising under 42 U.S.C. § 1983 "accrues" when the

plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v.*

*City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see also Covington v. City of New*

*York*, 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (Schendlin, J.) (same).  "Thus, in determining

when the statute begins to run, the 'proper focus is on the time of the [wrongful] act, not the

point at which the consequences of the act become painful.'"  *Covington*, 916 F. Supp. at 285

(quoting *Bailey v. Tricolla*, No. CV-94-4597, 1995 WL 548714, at *3 (E.D.N.Y. Sept. 12, 1995)

(Sifton, C.J.)).

An exception to the "knew-or-should have known accrual date" rule is the continuing

violation doctrine.  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).  Under this

exception, "[w]hen a plaintiff brings a Section 1983 claim challenging a discriminatory policy,

'commencement of the statute of limitations period may be delayed until the last discriminatory

act in furtherance of it.'"  *Id.* (quoting *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994)).

The Second Circuit has held that the "continuing violation doctrine can apply when a prisoner

challenges a series of acts that together comprise an Eighth Amendment claim of deliberate

indifference to serious medical needs."  *Id.* at 182.  For the continuing violation doctrine to apply

in Eighth Amendment deliberate indifference claims, "the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in furtherance of that policy.'" *Id.* (quoting *Harris v. City of New York*, 186 F.3d 243, 150 (2d Cir. 1999)).

Merely alleging a series of isolated and unrelated actions that allegedly constitute deliberate indifference is insufficient to invoke the "continuing violation" doctrine. *See, e.g.*, *Cabassa v. Gummerson*, No. 01-CV-1039 (DNH/GHL), 2006 WL 1559215, at *6 (N.D.N.Y. Mar. 30, 2006) (Lowe, Mag. J.) ("[R]eliance on the 'continuing violation' doctrine is misplaced given that Plaintiff's claims (even as liberally construed) allege, overwhelmingly, merely a series of (approximately three-dozen) isolated and unrelated actions taken by one or more of fifteen individuals at various times over a seven-month period at different locations within [the correctional facility], which actions (allegedly) constitute a variety of different constitutional violations."); *Verley v. Goord*, No. 02-CV-1182, 2004 WL 526740, at *8 (S.D.N.Y. Jan. 23, 2004) (Freeman, Mag. J.) ("Because these doctors' involvement consisted of isolated acts . . . the doctrine of 'continuing violation' cannot be applied to toll the statute of limitations as to [the inmate's] claims" of deliberate indifference to a serious medical need against two defendants for inappropriately cancelling the inmate's appointments for a liver biopsy.).

In this case, it is difficult to characterize Plaintiff's claims as merely a series of isolated and unrelated actions at various times during his incarceration at HCJ that allegedly constitute deliberate indifference.  However, Plaintiff does not allege and the record does not reveal the "existence of an ongoing policy" of deliberate indifference, which is a prerequisite to invoking the "continuing violation" doctrine.  Despite this, in affording Plaintiff the special solicitude that

26

he deserves as a *pro se* litigant, the Court will analyze the merits of Plaintiff's claims and

Defendant Macri's arguments that she was not deliberately indifferent to Plaintiff's serious

medical needs.

### 3.   Deliberate Indifference

The medical indifference standard has already been stated above and will not be restated

here.  *See* Point III(B) *supra*.  Defendant Macri has conceded that Plaintiff's conditions were

sufficiently serious.  (Dkt. No. 58-2 at 7.)  Thus, the only remaining question is whether there are

issues of material fact as to whether Defendant Macri acted with deliberate indifference to

Plaintiff's serious medical needs.

Plaintiff accuses Defendant Macri of exhibiting deliberate indifference to tendinitis in his

right ankle.  (Dkt. No. 33 at 8.)  Defendant Macri ordered an x-ray for Plaintiff's right ankle.

(Dkt. No. 62-1 at 9.)  The results of an x-ray, dated August 21, 2006, "show[ed] no evidence for

[*sic*] fracture or dislocation."  *Id.* at 9.  Defendant Macri ordered an analgesic balm for Plaintiff

on August 22, 2006, and approved an appointment with an orthopedic specialist on August 31,

2006, because Plaintiff continued to complain of pain.  (Dkt. No. 62-1 at 40, 46.)  Plaintiff saw

an orthopedic specialist on November 15, 2006.  (Dkt. No. 62-1 at 5.)  The specialist noted that

Plaintiff had right Achilles tendinitis, and ordered the painkillers ibuprofen and feldene.  *Id.*

Plaintiff appears to claim that this three-month delay in treatment amounted to deliberate

indifference.  (Dkt. No. 70 at 6.)  He also accuses Defendant Macri of failing to provide the

painkillers that the specialist ordered.  *Id.*

A "delay in medical treatment does not necessarily invoke the Eighth Amendment."

*Morrison*, 2008 WL 5451639 at *7 n.19.  As noted above, delayed treatment amounts to

27

deliberate indifference when "officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." *Id.* (internal citation omitted).

In this case, there is no indication the three-month delay between when Defendant Macri ordered a specialist and when Plaintiff saw a specialist was the result of any deliberate indifference on the part of Defendant Macri. There is no indication that the delay was the result of a punishment, that the tendinitis was a "life-threatening or fast-degenerating condition," or that major surgery was required. Moreover, contrary to Plaintiff's claims that Defendant Macri deprived Plaintiff of the painkillers that the specialist recommended, Plaintiff's medical records show that Defendant Macri ordered feldene, ibuprofen, and acetaminophen in the days following Plaintiff's appointment with the orthopedic specialist. (Dkt. No. 61-1 at 36.)

In opposing summary judgment, Plaintiff also accuses Defendant Macri of ignoring his requests for additional pain medication or an MRI in May 2007. (Dkt. No. 70 at 6, 10-11.) To support that proposition, Plaintiff references a note, dated May 5, 2007, addressed to all shift sergeants indicating that Plaintiff would continuously kick his door until he was provided with an incident report stating that he "has an emergency medical condition that needs surgery." *Id.* at 32. Plaintiff's reliance on a document that was not addressed to Defendant Macri and does not reveal the nature of the "emergency medical condition" is insufficient to raise an issue of fact as to whether Defendant Macri was deliberately indifferent to Plaintiff's ankle pain.

Plaintiff also accuses Defendant Macri of ignoring other conditions, including high blood pressure, hemorrhoids, mental illness, and pre-existing injuries on the neck, back, and shoulder. (Dkt. No. 33 at 7-9.) Plaintiff began his confinement in HCJ on March 16, 2006. (Dkt. No. 59-1

at 14.)  An "Inmate Initial Examination" form dated March 16, 2006, and completed by

Defendant Macri indicates that she took note of Plaintiff's high blood pressure and bipolar

disorder.  (Dkt. No. 62-1 at 40.)  A "Provider Orders" form shows that Defendant Macri

approved a number of medications for Plaintiff between March 17, 2006, and August 22, 2006,

to treat his hemorrhoids, bipolar condition, constipation, ankle pain, and other ailments.  *Id.* at

41-42.  She also approved a dental referral for Plaintiff on October 16, 2006.  (Dkt. No. 61-2 at

10.)  Three days later, she wrote Plaintiff a prescription for Clonazepan to treat his anxiety and

sleeping issues.  (Dkt. No. 62-1 at 38.)  Defendant Macri ordered a number of blood tests on

Plaintiff in September and October 2006 to monitor Plaintiff's nutrition and organ function

levels.  (Dkt. No. 62-1 at 17-19.)  From October 2006 through February 2007, Defendant Macri

approved orders for Plaintiff to receive pain, orthopedic, blood pressure, and hemorrhoid

treatments.  (Dkt. No. 61-1 at 35-37.)  She ordered blood work and daily checks of Plaintiff's

blood pressure, and she changed the treatments when they did not work.  *Id.* at 35-36.  Defendant

Macri also changed Plaintiff's bipolar medication at his request and provided hemorrhoid

treatments and stool softeners from February to May 2007.  (Dkt. No. 61-1 at 33-34.)  Thus, even

after construing all ambiguities in Plaintiff's favor, a review of the medical record belies

Plaintiff's claims that Defendant Macri provided inadequate medical care in violation of

Plaintiff's constitutional rights.

Moreover, Plaintiff's own admissions further undermine his medical indifference claims.

He admits that he received bipolar medication while incarcerated at HCJ.  (Dkt. No. 59-1 at 28.)

He also acknowledges seeing a dentist on two separate occasions and an orthopedic specialist

during his incarceration.  (Dkt. No. 78 at 44.)

Finally, Plaintiff's refusal of the prescribed treatment on numerous occasions further negates allegations of deliberate indifference.  *See Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 WL 4905240, at *10 (N.D.N.Y. Sept. 29, 2010) (Lowe, Mag. J.) (citing *Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003) (Chin, J.)).  Plaintiff's medical records reveal that he refused psychiatric and blood pressure medication on numerous occasions. (*See* Dkt. No. 61-1 at 6, 8-12, 15-17, 19-32.)  While he might have refused the prescribed treatment because he disagreed with them, prisoners are not afforded the medical treatment of their choice.  *Chance*, 143 F.3d at 703.  "Differences in opinions between [medical staff] and an inmate patient as to the appropriate . . . medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs."  *Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) (Kahn, J.) (citing cases).  "[M]ere disagreement over proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703.

Accordingly, I recommend granting Defendant Macri's motion for summary judgment.

### 4.    Infliction of Emotional Distress

Defendant Macri has construed Plaintiff's complaint as possibly alleging state law claims for either the intentional or negligent infliction of emotional distress.  (Dkt. No. 58-2 at 10.)  "In the absence of original federal jurisdiction, the decision of whether to exercise jurisdiction over pendent state law claims is within the court's discretion."  *Butler v. LaBarge*, No. 9:09-cv-1106 (GLS/DRH), 2010 WL 3907258, at *3 (N.D.N.Y. Sept. 30, 2010) (Sharpe, J.) (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006)).  When all federal claims are

eliminated before trial, the balance of factors in deciding whether to exercise jurisdiction over remaining state law claims leans toward dismissal.  *See Kolari*, 455 F.3d at 122.  But a court may choose to exercise jurisdiction if a state law claim raises an important question of federal policy. *See id.* at 122-23.  Here, Plaintiff has failed to establish a federal claim against Defendant Macri or an important issue of federal policy.

Thus, in light of my recommendation that the Court dismiss Plaintiff's federal claims against Defendant Macri, I recommend that the Court decline to exercise pendent jurisdiction over any possible state law claims against her.

**D.    Failure to Protect**

Plaintiff's failure to protect claim arises from the alleged failure of HCJ staff to prevent an August 24, 2006, fight between Plaintiff and another inmate over a soup bowl.  (Dkt. No. 69 at 5.)  The duties which fall within the ambit of the Eighth Amendment include the duty to safeguard inmates from harm, often referred to as the "duty to protect."[14]  Violations of the duty to protect are commonly asserted in cases involving inmate on inmate violence and are analyzed under the Eighth Amendment with reference to whether the conditions under which the inmate was confined posed an unreasonable risk of harm.  *See Snyder v. McGinnis*, No. 03-CV-902F, 2004 WL 1949472, at *4 (W.D.N.Y. Sep. 2, 2004) (Skretny, J.).  "The Constitution does not guarantee an assault-free prison environment; it promises only reasonable good faith protection."

---

[14]  If Plaintiff were a pretrial detainee, then this claim must be analyzed under the Fourteenth Amendment's Due Process clause rather than under the Eighth Amendment.  *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996).  However, the standards for evaluating a failure to protect claim brought by a pretrial detainee are identical under both the Eighth and Fourteenth Amendments. *See Corye v. Carr*, No. 9:08-CV-46, 2010 WL 396363, at *8 n.9 (N.D.N.Y. Jan. 26, 2010) (Kahn, J.) (citations omitted).

*McGriff v. Coughlin*, 640 F.Supp. 877, 880 (S.D.N.Y. 1986) (Leval, J.).  As a result, not every

injury suffered by an inmate at the hands of another constitutes a constitutional violation by the

prison official responsible for the inmate's safety.  *See Farmer*, 511 U.S. at 834.  Courts in this

Circuit have emphasized that "the standard for prisoner 'failure to protect' claims brought under

42 U.S.C. § 1983 is quite high."  *Snyder*, 2004 WL 1949472, at *4 (citations omitted); *Hamilton

v. Riordan*, No. 07 Civ. 7163, 2008 WL 4222089, at *1 (S.D.N.Y. Sep. 11, 2008) (Fox, Mag. J.).

In order to state a constitutional claim for failure to protect, the plaintiff must show that

he was incarcerated under conditions posing a substantial risk of serious harm, and that prison

officials acted with deliberate indifference to that risk and the inmate's safety.  *Farmer*, 511 U.S.

at 836.  The plaintiff must show that prison officials actually knew of and disregarded an

excessive risk of harm to the inmate's health and safety.  *Id.* at 837.  The defendant must be

aware of the facts from which the inference can be drawn that a substantial risk of serious harm

exists and the defendant must also draw that inference.  *Id.*

Here, Plaintiff has neither alleged nor shown the personal involvement of any of the

named defendants—a prerequisite to any Section 1983 claim—in the alleged failure to protect on

August 24, 2006.  Moreover, to the extent that Plaintiff asserts this claim against Herkimer

County,[15] Plaintiff has neither alleged nor shown that the purported constitutional violation resulted from a municipal custom or policy.

Accordingly, I recommend granting County Defendants' motion for summary judgment as to Plaintiff's failure to protect claim.

## IV.   CONCLUSION

**ACCORDINGLY**, it is

**RECOMMENDED** that County Defendants' motion for summary judgment (Dkt. No. 57) be **GRANTED** as to the failure to protect claim and **DENIED IN ALL OTHER RESPECTS**; and it is further

**RECOMMENDED** that Defendant Macri's motion for summary judgment (Dkt. No. 58) be **GRANTED IN ITS ENTIRETY**; and it is further

**RECOMMENDED** that Defendant Macri be **DISMISSED**; and it is further

**ORDERED** that the clerk provide copies of *Butler v. LaBarge*, No. 9:09-CV-1106 (GLS/DRH), 2010 WL 3907258, at *1 (N.D.N.Y. Sept. 30, 2010); *Gillard v. Rovelli*, No. 9:09-CV-0860 (NAM/GHL), 2010 WL 4905240, at *1 (N.D.N.Y. Sept. 29, 2010); *Corye v. Carr*, No. 9:08-CV-46, 2010 WL 396363, at *1 (N.D.N.Y. Jan. 26, 2010); *Szymaszek v. Mahar*,

---

[15]  The Amended Complaint states that it was the "Herkimer County Jails Administration" [*sic*] that failed to transfer Plaintiff to another county jail with psychiatric facilities.  (Dkt. No. 33 at 8.)  Plaintiff's opposition to the summary judgment motion states that it was the "Herkimer County Jails Staff" [*sic*] that is liable for the constitutional violation.  (Dkt. No. 69 at 5.)  The real party in interest, however, is Herkimer County.  *See Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 561 n.1 (S.D.N.Y. 2000) (Sweet, J.) (noting that in prisoner's Section 1983 action, the correct defendant is Westchester County, not Westchester County Jail); *St. John Rennalls v. County of Westchester*, 159 F.R.D. 418, 419 n.1 (S.D.N.Y. 1994) (Broderick, J.) (substituting the real party in interest, the County of Westchester, for the originally named defendant, Westchester County Jail).

No. 9:06-CV-719 (TJM/GJD), 2008 WL 4518613, at *1 (N.D.N.Y. Sept. 29, 2008); *Demata v.*
*New York State Corr. Dep't of Health Servs.*, No. 99-0066, 198 F.3d 233 (table), 1999 WL
753142, at *1 (2d Cir. Sept. 17, 1999); *Zuk v. Onondaga County*, No. 5:07-CV-732 (GTS/GJD),
2010 WL 3909524, at *1 (N.D.N.Y. Sept. 30, 2010); *Morrison v. Mamis*, No. 08 Civ. 4302
(PAC) (AJP), 2008 WL 5451639, at *1 (S.D.N.Y. Dec. 18, 2008); *Hamilton v. Riordan*, No. 07
Civ. 7163, 2008 WL 4222089, at *1 (S.D.N.Y. Sept. 11, 2008); *Cabassa v. Gummerson*, No.
01-CV-1039 (DNH/GHL), 2006 WL 1559215, at *1 (N.D.N.Y. Mar. 30, 2006); *Burgess v.*
*County of Rensselaer*, No. 1:03-CV-00652 (NPM-RFT), 2006 WL 3729750, at *1 (N.D.N.Y.
Dec. 18, 2006); *Powell v. Bucci*, No. 04-CV-1192, 2005 WL 3244193, at *1 (N.D.N.Y. Nov. 30,
2005); *Snyder v. McGinnis*, No. 03-CV-902F, 2004 WL 1949472, at *1 (W.D.N.Y. Sept. 2,
2004); *Verley v. Goord*, No. 02-CV-1182, 2004 WL 526740, at *8 (S.D.N.Y. Jan. 23, 2004);
*Rodriguez v. Savickas*, No. 92 Civ. 4032 (MBM), 1996 WL 671100, at *1 (S.D.N.Y. Nov. 19,
1996); *Hodge v. Coughlin*, No. 92 Civ. 0622, 1994 WL 519902, at *1 (S.D.N.Y. Sept. 22, 1994),
in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir.
2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file
written objections to the foregoing report.  Such objections shall be filed with the Clerk of the
Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**
**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated:  September 29, 2011
        Syracuse, New York

George H. Lowe
United States Magistrate Judge